1
2
3
4
5

SEYFARTH SHAW LLP
Elizabeth M. Levy (SBN 268926)
E-mail: elevy@seyfarth.com
Catherine S. Feldman (SBN 299060)
cfeldman@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

6
7

Attorneys for Defendant
MICHAEL KORS STORES (CALIFORNIA), LLC

8

9

10

11

12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18

JACOB BECERRA, individually and on behalf of all others similarly situated,

        Plaintiff,

  v.

MICHAEL KORS STORES (CALIFORNIA), LLC and DOES 1 through 50, inclusive,

        Defendants.

Case No.  **'23 CV 0767 TWR BLM**

**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT BY DEFENDANT MICHAEL KORS STORES (CALIFORNIA), LLC**

(San Diego Superior Court, Case No. 37-2023-00012218-CU-OE-CTL)

*[Concurrently filed with Disclosure Statement; Civil Case Cover Sheet; Declarations of Catherine S. Feldman and Rosemarie Cirillo in Support Thereof]*

Complaint Filed:     March 23, 2023

19

20

21

22

23

24

25

26

27

28

i

DEFENDANT'S NOTICE OF REMOVAL

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    BACKGROUND ...................................................................................................1

4    II.    TIMELINESS OF REMOVAL ...........................................................................2

5    III.    CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL ..................................3

6        A.    Plaintiff and Defendant Are Minimally Diverse ................................................3

7            1.    Plaintiff Is A Citizen of California ......................................................4

8            2.    Defendant Is Not A Citizen Of California ...........................................4

9        B.    The Amount in Controversy Exceeds the Statutory Minimum .....................7

10            1.    Unpaid Overtime Claim .....................................................................11

11            2.    Wages Not Timely Paid During Employment Claim ........................12

12            3.    Wage Statement Penalties ...................................................................13

13            4.    Waiting Time Penalties ......................................................................13

14            5.    Approximate Aggregate Amount In Controversy ..............................15

15            6.    Attorneys' Fees .................................................................................15

16    IV.    VENUE ..............................................................................................................18

17    V.    NOTICE TO STATE COURT AND ALL PARTIES ...........................................18

18    VI.    PRAYER FOR REMOVAL .................................................................................19

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrego v. Dow Chemical Co.*,
  443 F.3d 676 (9th Cir. 2006) .......................................................................7, 8

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ........................................................................9, 16

*Armstrong v. Church of Scientology Int'l*,
  243 F.3d 546 (9th Cir. 2000) ............................................................................4

*Brady v. Mercedes-Benz USA, Inc.*,
  243 F. Supp. 2d 1004 (N.D. Cal. 2002)............................................................15

*Byrd v. Masonite Corp.*,
  2016 WL 2593912 (C.D. Cal. May 5, 2016) ....................................................14

*Campbell v. Vitran Exp., Inc.*,
  471 F. App'x 646 (9th Cir. 2012) ....................................................................17

*Chavez v. JPMorgan Chase & Co.*,
  888 F.3d 413 (9th Cir. 2018) ...........................................................................16

*Cicero v. DirecTV, Inc.*,
  2010 WL 2991486 (C.D. Cal. July 27, 2010)....................................................17

*City of Clarksdale v. BellSouth Telecommunications, Inc.*,
  428 F.3d 206 (5th Cir. 2005) .............................................................................2

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014)..............................................................................................9

*Flores v. Element Materials Tech. Huntington Beach LLC*,
  2021 WL 663124 (C.D. Cal. Feb. 19, 2021) ......................................................5

*Fristoe v. Reynolds Metals Co.*,
  615 F.2d 1209 (9th Cir. 1980) ...........................................................................7

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
  899 F.3d 785 (9th Cir. 2018) ...........................................................................16

i
DEFENDANT'S NOTICE OF REMOVAL

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ......................................................................15

*Guglielmino v. McKee Foods Corp.*,
    506 F.3d 696 (9th Cir. 2007) ....................................................................8, 10

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)...........................................................................................6

*Industrial Tectonics, Inc. v. Aero Alloy*,
    912 F.2d 1090 (9th Cir. 1990) ........................................................................6

*Jack v. Ring LLC*,
    553 F. Supp. 3d 711 (N.D. Cal. 2021) ............................................................5

*Kantor v. Wellesley Galleries, Inc.*,
    704 F.2d 1088 (9th Cir. 1983) ........................................................................4

*Korn v. Polo Ralph Lauren Corp.*,
    536 F. Supp. 2d 1199 (E.D. Cal. 2008) ..........................................................9

*Lethgo v. CP IV Waterfront, LLC*,
    2022 WL 2177125 (D. Haw. June 16, 2022)..................................................5

*Longmire v. HMS Host USA, Inc.*,
    2012 WL 5928485 (S.D. Cal. Nov. 26, 2012).................................................16

*Muniz v. Pilot Travel Ctrs. LLC*,
    2007 WL 1302504 (E.D. Cal. May 1, 2007) ..............................................9, 16

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999)........................................................................................2

*Pae v. Fox Rest. Concepts, LLC*,
    2017 WL 3184464 (C.D. Cal. July 25, 2017)..............................................5, 6

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ......................................................................17

*In re Quintas Secs. Litig.*,
    148 F. Supp. 2d 967 (N.D. Cal. 2001)...........................................................17

*Ramirez v. Carefusion Res., LLC*,
    2019 WL 2897902 (S.D. Cal. July 5, 2019) ...................................................5

ii

DEFENDANT'S NOTICE OF REMOVAL

*Ramos v. Schenker, Inc.*,
   2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) ...................................................17

*Rodriguez v. AT&T Mobility Servs. LLC*,
   728 F.3d 975 (9th Cir. 2013) ..........................................................................8, 9

*Sanchez v. Monumental Life Ins. Co.*,
   102 F.3d 398 (9th Cir. 1996) ................................................................................8

*Schiller v. David's Bridal, Inc.*,
   2010 WL 2793650 (E.D. Cal. July 14, 2010).......................................................9

*Soliman v. Philip Morris, Inc.*,
   311 F. 3d 966 (9th Cir. 2002) ...............................................................................7

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013)...............................................................................................8

*State Farm Mut. Auto Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) .................................................................................4

*Tajonar v. Echosphere*,
   LLC, 2015 WL 4064642 (S.D. Cal. July 2, 2015) .............................................14

*Valdez v. Allstate Ins. Co.*,
   372 F.3d 1115 (9th Cir. 2004) ...............................................................................9

*Wheatley v. Masterbrand Cabinets, LLC et al.*,
   2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) ......................................16, 17

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)......................................................17

*Zavala v. Deutsche Bank Trust Co. Americas*,
   2013 WL 3474760 (N.D. Cal. July 10, 2013) .......................................................4

**State Cases**

*Caliber Bodyworks, Inc. v. Sup. Ct.*,
   134 Cal. App. 4th 365 (2005) .............................................................................13

*Davis v. HSBC Bank Nevada, N.A.*,
   557 F.3d 1026, 1032 n.16 (2009)  .........................................................................6

iii

DEFENDANT'S NOTICE OF REMOVAL

*Pineda v. Bank of Am., N.A.*,
  50 Cal. 4th 1389 (2010) ...................................................................................14

**Federal Statutes**

28 U.S.C. § 84(c) ...............................................................................................18

28 U.S.C. § 1332 ........................................................... 1, 3, 4, 5, 6, 7, 17, 18

28 U.S.C. § 1367(a) .........................................................................................18

28 U.S.C. § 1441 ................................................................................................1

28 U.S.C. § 1441(a) ...............................................................................*passim*

28 U.S.C. § 1446 ............................................................................................1, 2

28 U.S.C. § 1446(a) .........................................................................................18

28 U.S.C. § 1446(b) ...........................................................................................2

28 U.S.C. § 1446(d) .........................................................................................18

28 U.S.C. § 1453 ................................................................................................1

**State Statutes**

Cal. Civ. Code § 340(a) ...........................................................................12, 13

Cal. Civ. Proc. Code § 338(a) .......................................................................14

Cal. Code Civ. Proc. § 415.10 .........................................................................2

Cal. Lab. Code § 203 ................................................................................13, 14

Cal. Lab. Code § 204 .......................................................................................12

Cal. Lab. Code § 510 .......................................................................................11

Cal. Lab. Code § 1194 .....................................................................................11

Cal. Labor Code § 201 ....................................................................................13

Cal. Labor Code § 202 ....................................................................................13

Cal. Labor Code § 210 ....................................................................................12

94080322v.5

Cal. Labor Code § 226 ........................................................................13

Cal. Labor Code § 226(e)...................................................................13

Cal. Labor Code § 226.7 ...................................................................10

**Rules**

Emergency Rule 9 .......................................................................*passim*

**Regulations**

Senate Judiciary Committee Report, S. Rep. No. 109-14 .........................7

**Other Authorities**

Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at
    28 U.S.C. § 1446(c)(2)................................................................8

Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005),
    *reprinted in* 2005 U.S.C.C.A.N. 3 ..............................................7

DEFENDANT'S NOTICE OF REMOVAL

94080322v.5

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant MICHAEL KORS STORES (CALIFORNIA), LLC ("Defendant") hereby removes the above-captioned action from the California Superior Court, County of San Diego to the United States District Court for the Southern District of California. This Court has original federal jurisdiction over this action pursuant section 1332(d)(2) (the Class Action Fairness Act of 2005) ("CAFA"), and removal jurisdiction under 28 U.S.C. sections 1332(c), 1332(d)(2), 1441(a), 1446 and 1453. Removal is proper for the following reasons:

## I.    BACKGROUND

1.    On March 23, 2023, Plaintiff JACOB BECERRA ("Plaintiff") filed an unverified putative Class Action Complaint in the Superior Court of the State of California, County of San Diego, entitled "JACOB BECERRA , *Plaintiff, v. MICHAEL KORS STORES (CALIFORNIA), LLC and DOES 1 through 50, inclusive, Defendants*" designated Case No. 37-2023-00012218-CU-OE-CTL (the "Class State Court Action").

2.    On March 27, 2023, Plaintiff served the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, Alternative Dispute Resolution (ADR) Information, and Stipulation to Use Alternate Dispute Resolution (ADR) on Defendant's agent for service of process. (Declaration of Catherine S. Feldman ("Feldman Decl.") ¶ 3, Ex. A.)

3.    On April 24, 2023, Defendant filed its Answer to Plaintiff's unverified Complaint in San Diego County Superior Court. (Feldman Decl. ¶ 4, Ex. B.)

4.    Exhibits A and B constitute all of the pleadings served on Defendant, filed by Defendant in the San Diego Superior Court, or retrieved from the Superior Court's records prior to filing of this Notice of Removal. (Feldman Decl. ¶ 5.)

## II. **TIMELINESS OF REMOVAL**

5.     The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

6.     The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.     This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendant's agent for service of process, on March 27, 2023.  Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).  Thirty (30) days from the service of the Complaint on Defendant on March 27, 2023 is April 26, 2023.

8.     Plaintiff's Complaint asserts nine causes of action for: (1) Failure To Pay All Overtime Wages; (2) Meal Period Violations; (3) Rest Period Violations; (4) Paid Sick Leave Violations: (5) Untimely Payment of Wages; (6) Wage Statement Violations; (7) Waiting Time Penalties; (8) Failure to Provide Records; and (9) Unfair Competition.

9.     The Complaint seeks to certify the following class:

> All current and former non-exempt hourly employees of
> Michael Kors who worked in the State of California at any time

94080322v.5

during the four years preceding the filing of this action through
the present day (plus the additional 178-day statutory tolling
period under Emergency Rule 9) and who were paid overtime
wages, statutory sick pay wages, and/or Labor Code section
226.7 premiums in the same pay period they were paid non-
excludable forms of remuneration (including sales bonuses,
cash-in-lieu of fringe benefits, commissions, and differentials).

(Ex. A, Compl. ¶ 14.)

10.   Accordingly, for purposes of the calculations in this Notice of Removal, the "relevant time period" starting "four years preceding the filing of this action through present day (plus the additional 178-day statutory tolling period under Emergency Rule 9)" is from September 28, 2018 until the present.[1]

## III.   CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

11.   This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); Declaration of Rosemarie Cirillo ("Cirillo Decl."), ¶¶ 6-8.

### A.   Plaintiff and Defendant Are Minimally Diverse

12.   CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  Here, such

---

[1] Defendant disputes that Emergency Rule 9 extends the periods of alleged liability as Plaintiff claims, but uses the dates proposed by Plaintiff for the purposes of determining the amount in controversy only.

3

DEFENDANT'S NOTICE OF REMOVAL

minimal diversity exists among the parties.  Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Defendant (which is a citizen of Delaware and New York).

### 1.  Plaintiff Is A Citizen of California

13.   For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state").  Residence is prima facie evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

14.   The Complaint alleges that Plaintiff was allegedly employed with Defendant in California as a non-exempt employee. (Ex. A, Compl. ¶ 8.)  During his employment with Defendant, Plaintiff provided a California address.  (Cirillo Decl. ¶ 9.)  Further, a public records search shows that Plaintiff continues to reside in California.  (Feldman Decl. ¶ 6.)  Plaintiff's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit in San Diego Superior Court.

15.   Based on the foregoing, Plaintiff is a citizen of California.

### 2.  Defendant Is Not A Citizen Of California

16.   Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).

94080322v.5

17.     Defendant is a limited liability company ("LLC").  Under CAFA, LLCs "are citizens of the states under whose laws they are organized and the states where they have their principal place of business."  *See Lethgo v. CP IV Waterfront, LLC*, 2022 WL 2177125, at *6 (D. Haw. June 16, 2022)(citing 28 U.S.C. § 1332(d)(10): "[A]n unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."); *accord Flores v. Element Materials Tech. Huntington Beach LLC*, 2021 WL 663124, at *1 (C.D. Cal. Feb. 19, 2021)("Under CAFA, a limited liability company is 'deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.'")(quoting 28 U.S.C. § 1332(d)(10)); *Pae v. Fox Rest. Concepts, LLC*, 2017 WL 3184464, at *2 (C.D. Cal. July 25, 2017)("[A] limited liability corporation is an unincorporated association for the purposes of CAFA.") *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) ("[F]or CAFA purposes under § 1332(d)(10)[,] . . . an LLC is properly considered an 'unincorporated association' within the meaning of § 1332(d)(10) . . . ."); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) ("[J]udges in the Ninth and Fourth Circuits have suggested that CAFA did intend to change the traditional diversity rule for LLCs.  The Court therefore finds that Defendant's citizenship is based on its principal place of business" and the state under whose laws it is organized.).

18.     Defendant was organized under the state laws of Delaware. (Cirillo Decl. ¶ 4.)  Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Delaware.

19.     Further, as shown below, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of New York.   (Cirillo Decl. ¶ 4.)  Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of New York.

20.      The United States Supreme Court held that when determining a business entity's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).  The Ninth

Circuit applies "the same tests to determine the 'principal place of business' for corporations and unincorporated associations," such as LLCs.  *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 n.16 (2009) ("Generally, a company is a 'citizen' of at most two states, the state of incorporation for corporations or state of organization for unincorporated associations, and the state where it has its 'principal place of business.'"); *Pae*, 2017 WL 3184464, at *2 ("[A] limited liability corporation is an unincorporated association for the purposes of CAFA.").  Under the "nerve center" test, the "principal place of business" means the headquarters where a business entity's high level officers direct, control, and coordinate its activities on a day-to-day basis.  *Id*. at 92-93 ("We conclude that 'principal place of business' is best read as referring to the place where a [business entity's] officers direct, control, and coordinate th[at entity's] activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092-1093 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

21.     Under the "nerve center" test, New York is Defendant's principal place of business.  Defendant's headquarters are located at 11 West 42nd Street, New York, NY 10036 where Defendant's high level officers direct, control, and coordinate its activities. (Cirillo Decl. ¶ 4.)  Defendant's high level officers, including its Chief Executive Officer, Chief Operating Officer, and General Counsel maintain offices in the New York, New York headquarters, and its corporate level functions are performed in the New York, N.Y. office.  (*Id.*)

22.     Therefore, for purposes of diversity of citizenship, Defendant is and has been at all times since this action commenced, citizen of the State of Delaware and the State of New York.  28 U.S.C. § 1332(c)(1).  Because Plaintiff is a citizen of California and Defendant is a citizens of Delaware and New York, minimal diversity exists for purposes of CAFA.

23.     **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal

jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"). Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal. Thus, the existence of "DOES 1 through 50" in the Complaint does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

## B. The Amount in Controversy Exceeds the Statutory Minimum

24. CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

DEFENDANT'S NOTICE OF REMOVAL

25. **Preponderance Of The Evidence Standard.** Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent. Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum. In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

26. In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional minimum]. Under this burden, the defendant must provide evidence establishing that it is

8

94080322v.5

'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

27.    To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

28.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

29.    It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

30.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the

evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

31.     The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000.  Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "[a]ll current and former non-exempt hourly employees of [Defendant] (1) who worked in the State of California at any time during the four years preceding the filing of this action through the present date (plus the additional 178-day statutory tolling period under Emergency Rule 9), and (2) who were paid overtime wages, statutory sick pay wages, and/or Labor Code § 226.7 premiums in the same pay period in which they were also paid non-excludable forms of remuneration (including sales bonuses, cash-in-lieu of fringe benefits, commissions, and differentials)."  (Ex. A, Compl. ¶ 14a).

32.     Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to pay overtime wages and paid sick leave wages, and meal and rest period premiums at the correct rate of pay, failure to pay all wages due upon resignation or termination of employment, failure to provide accurate and complete itemized wage statements, and unfair business practices.  (Feldman Decl., Ex. A, Complaint.)  Plaintiff also seeks attorneys' fees and costs.  (*Id.* at Ex. A, Complaint, Prayer for Relief.)

33.     As set forth below, the amount in controversy implicated by the class-wide allegations easily exceeds $5,000,000.00 even without accounting for the potential recovery under all of Plaintiff's causes of action.  **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**

94080322v.5

### 1.    Unpaid Overtime Claim

34.    Plaintiff alleges Defendant failed to pay employees all overtime wages owed in violation of California Labor Code sections 510 and 1194.  Specifically, Plaintiff alleges Defendant did not properly calculate Plaintiff and class members' "'regular rate of pay' for all hours worked in excess of eight hours in one day, 40 hours in one week, or the first eight hours worked on the seventh day of work in any one workweek and no less than twice their respective 'regular rate of pay' for all hours over 12 hours in one day and any work in excess of eight hours on any seventh day of a workweek for such hours worked."  (Ex. A, Compl. ¶ 33.)

35.    As to these claims, Plaintiff seeks to certify a class covering the last four years plus a 178-day tolling period under Emergency Rule 9.  Defendant employed at least 1,992 non-exempt California employees who worked overtime and were paid additional remuneration in the same pay period in 10,165 pay periods since September 28, 2018.  (Cirillo Decl. ¶ 6.)  During the relevant period, these putative class members' average hourly rate of pay was $17.66 and the average additional compensation paid per pay period was $213.01.  (Cirillo Decl. ¶ 6.)  These employees worked an average of 76.6 hours per pay period, with an average of 19.08 hours of that time paid as overtime.  (Cirillo Decl. ¶ 6.)  Based on this data, under Plaintiff's theory in which the renumeration paid during a pay period must be factored into the regular rate during that same pay period, the average alleged regular rate of pay for Plaintiff and the putative class members was approximately $20.44 per hour.

36.    Based on Plaintiff's allegation that Defendant paid the putative class members' overtime wages at one and a half times their base rate of pay rather than one and a half times their regular rate of pay, the amount in controversy for Plaintiff's claim is **$808,763.99** [($20.44 average regular rate of pay x 1.5 overtime rate) x (19.08 average overtime worked per pay period) x (10,165 pay periods)] – [($17.66 average base hourly rate x 1.5 overtime rate) x (19.08 average overtime worked per pay period) x (10,165 pay periods)].

94080322v.5

## 2.    Wages Not Timely Paid During Employment Claim

37.    Plaintiff alleges that Defendant failed to timely pay wages during employment pursuant to California Labor Code section 204 because Defendant failed to pay overtime, paid sick time and meal and rest premiums at the regular rate of pay. Labor Code section 204 provides in pertinent part that "[l]abor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month." Plaintiff alleges that "Plaintiff and class members are entitled to recover the full amount of unpaid wages, in addition to a statutory penalty in the amount of $100 for the initial violation for each failure to pay each employee and $200 for all subsequent violations for all willful or intentional violations of reach failure to pay each employee, plus 25 percent of the amount unlawful withheld . . . provided in Labor Code §210." (Ex. A, Comp. at ¶ 56.)

38.    Causes of action for penalties under Labor Code section 210 are subject to a one-year statute of limitations. *See* Cal. Civ. Code §340(a). This period (plus the additional 178-day statutory tolling period under Emergency Rule 9) is from September 28, 2021 until the present. During this period, 945 non-exempt California employees of Defendant were paid additional remuneration during pay periods in which they took paid sick leave, worked overtime, or received a meal or rest period premiums in approximately 4,269 bi-monthly pay periods.[2] (Cirillo Decl. ¶ 7.) Accordingly, if each such employee is allotted a $100 penalty for the initial alleged violation and $200 for all alleged subsequent violation, the amount in controversy for Plaintiff's claim is **$759,300** (945 pay periods at $100 initial penalty) + (3,324 pay periods x $200 penalty per subsequent violation).

---

[2] Defendant maintains that statutory sick pay compensation should not be included for purposes of calculating penalties pursuant to section 210, but has included this category of pay in the amount in controversy analysis in accordance with Plaintiff's allegations in the Complaint.

DEFENDANT'S NOTICE OF REMOVAL

94080322v.5

### 3.    Wage Statement Penalties

39.    The Complaint also alleges that Defendant "knowingly and intentionally failed in their affirmative obligation [to] provide accurate itemized wage statements to Plaintiff and class members."  (Ex. A, Comp. ¶ 59.)  Again, this is based on the theory that Defendant failed to pay overtime, meal and rest premiums and paid sick leave at the correct regular rate of pay.

40.    Labor Code section 226(e) provides a minimum of $50 for the initial violation of as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. *See* Cal. Lab. Code § 226(e).  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Thus, here factoring in the additional 178-day statutory tolling period under Emergency rule 9, the relevant period for this cause of action is from September 28, 2021 to present.

41.    During that time period, approximately 945 non-exempt California employees were paid additional remuneration in the same pay periods in which they took paid sick leave, worked overtime, or received a meal or rest period premium in approximately 4,269 pay periods.  (Cirillo Decl. ¶ 7.)

42.    Plaintiff contends that the initial violation is $50, and that subsequent violations are $100.  (Ex. A, Compl. ¶ 61.)  Using Plaintiff's method of calculation, the amount in controversy for this claim is **$379,650** (945 first pay periods x $50) + (3,324 pay periods x $100 penalty for subsequent violations).

### 4.    Waiting Time Penalties

43.    Plaintiff also alleges Defendant violated Labor Code sections 201 through 203 by failing to timely provide payment upon termination.  Specifically, Plaintiff alleges that Defendant failed to pay Plaintiff and the putative class members "all wages earned and unpaid . . . . immediately upon termination of employment or within 72 hours thereafter for employees who did not provide at least 72 hours prior notice of his or her

intention to quit, and further failed to pay those sums for 30 days thereafter." (Ex. A., Comp. ¶ 64). This theory is predicated on Plaintiff's contention that Defendant failed to correctly pay overtime, meal and rest premiums and paid sick leave at the correct regular rate of pay.

44.    Under California Labor Code section 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

45.    The statute of limitations period for California Labor Code section 203 penalties extends back only three years from the date of filing of the complaint, or March 23, 2020. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty"). However, with the additional 178-day statutory tolling period under Emergency Rule 9, the relevant period for this cause of action is from September 28, 2019 to present.

46.    It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

94080322v.5

47. During the relevant period, there were approximately 1,122 putative class members employed by Defendant in California whose employment ended. (Cirillo Decl. ¶ 8.)  The average rate of pay during this period was $17.66 per hour.  (Cirillo Decl. ¶ 6.)

48. Conservatively assuming that these 1,153 putative class members are owed 8 hours of pay per day for the maximum penalty of 30 days' wages (without including any overtime pay), the alleged amount in controversy for the claim for waiting time penalties would be approximately **$4,755,484.80** [($17.66 x 8 hours x 30 days) x 1,122 class members].

### 5.    Approximate Aggregate Amount In Controversy

49. Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is approximately **$6,703,198.79**, calculated as follows:

| | | |
|---|---|---|
| · | **$808,763.99** | Unpaid Overtime Compensation |
| · | **$759,300.00** | Penalties for Wages Not Timely Paid During Employment |
| · | **$379,650.00** | Wage Statement Penalties |
| · | **$4,755,484.80** | Waiting Time Penalties |

Note that including the amount in controversy for meal and rest periods and paid sick leave allegedly not paid at the correct regular rate would further increase the amount in controversy.

### 6.    Attorneys' Fees

50. Plaintiff also seeks attorneys' fees.  (Ex. A, Comp., Prayer for Relief ¶ j.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.

15

94080322v.5

Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.")

51.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at \*9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at \*4 (attorneys' fees appropriately included in determining amount in controversy).

52.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

53.     Indeed, the Ninth Circuit explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

54.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when

DEFENDANT'S NOTICE OF REMOVAL

warranted. *See, e.g.*, *Wheatley v. Masterbrand Cabinets, LLC et al.*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$1,675,799.70** in this case [$6,703,198.79 total amount in controversy * 0.25].

55.    Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the amount in controversy is at least **$8,378,998.49**, including attorneys' fees, which far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

56.    Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action

pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

57. To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV. <u>VENUE</u>

58. Venue lies in the Southern District of California pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(c). This action originally was brought in the Superior Court of the State of California, County of San Diego, which is located within the Southern District of the United States District Court for California. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V. <u>NOTICE TO STATE COURT AND ALL PARTIES</u>

59. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and all counsel of record, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of San Diego, in the State Court Action.

60. This Notice of Removal will be served on counsel of record for all parties. A Certificate of Service regarding the Notice of Removal and supporting documents will be filed concurrently.

61. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendant in this action are attached to the Levy Declaration as Exhibits A and B.

//

//

//

//

DEFENDANT'S NOTICE OF REMOVAL

94080322v.5

## VI.    **PRAYER FOR REMOVAL**

62.    WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

DATED:  April 26, 2023                    Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Catherine S. Feldman*
Elizabeth M. Levy
Catherine S. Feldman

Attorneys for Defendant
MICHAEL KORS STORES (CALIFORNIA), LLC

19
DEFENDANT'S NOTICE OF REMOVAL

94080322v.5